JANE ATKINS *et al.*, *Trustees of the Will of Richard Atkins, deceased*, v. THE NORDYKE & MARMON COMPANY.

#### No. 200.

SUBROGATION — *delay of five years in seeking, during which sale had under intervening mortgage, held laches and, denied.* Where a party takes a third mortgage supposing it to be a second mortgage, and with a part of the proceeds pays off and procures a release of the first mortgage, and then waits over five years before making any attempt at subrogation, during which time the second mortgage is foreclosed and the property is sold thereunder and bid in by the second mortgagee for much less than the sum due on the second mortgage, and then, more than three years after the recording of the deed to the purchaser under said sale, a

10—6 KAN. APP.

146    ATKINS v. NORDYKE CO.

N. Dept.              Opinion.  Wells, J.              6 Kan. App.

suit is brought by the holder of the third mortgage asking to be subrogated to the rights of the first mortgagee, *held*, that this court will not presume that said second mortgagee would be in as good condition if subrogation be now made as he would have been had it been done within a proper time ; and such subrogation will be denied.

Error from Shawnee Circuit Court. Hon. J. B. Johnson, Judge. Opinion filed December 18, 1897. *Affirmed*.

*S. L. Seabrook*, for plaintiffs in error.

*Rossington, Smith & Dallas* and *Clifford Histed*, for defendant in error.

WELLS, J.    This case was tried in the court below upon an agreed statement of facts, the substance of which, so far as is necessary to be stated in a review thereof, is as follows :

1. On December 3, 1884, R. J. Heale and Emma Heale, his wife, executed and delivered to Julia Curtis, now Julia Curtis Prall, their promissory note for $750, payable five years from date, with interest at the rate of eight per cent. until due, and interest after maturity at the rate of twelve per cent. per annum ; and secured said note by a mortgage upon lot 176 and the east half of lot 174, on Eighth Avenue, in the city of Topeka, Kan.  This mortgage was filed in the office of the register of deeds of the county of Shawnee, on December 4, 1884, and duly recorded in book 102, at page 235.

2. On March 20, 1885, R. J. Heale and Emma Heale executed and delivered to W. H. Rossington, trustee, their trust deed upon the premises hereinbefore described, to secure an indebtedness of $4,000, payable in installments of $1,333.33 on the fifteenth days of August, September, and October, 1885, respectively.  This trust deed was duly filed for record in the office of the register of deeds of the county of Shawnee, on April 14, 1885, and recorded in book 100

of deeds and mortgages, on page 379. Said trust
deed recited that it was "subject to a mortgage of
record, to wit, $750, on lot 176 and the east half of lot
174, Topeka, Kan.," which is the same mortgage
mentioned in the first paragraph.

3. On or about January 20, 1887, R. J. Heale and
Emma Heale obtained a loan of fifteen hundred dol-
lars of John D. Knox & Co., and executed their cer-
tain promissory note of that date therefor, securing
the same by mortgage upon the lots hereinbefore
described, the note being payable three years after
the date thereof, with interest at seven per cent. per
annum, payable semiannually, on the twentieth days
of January and July of each year, for which coupon
notes were executed. The mortgage securing this
note contained the usual covenants of warranty, and
also a condition that, if the interest notes should not
be paid when due, the whole of the first note should
mature and be due at that time without demand, and
said first note should thereafter draw interest at the
rate of twelve per cent. per annum. This mortgage
was filed for record in the register of deeds' office in
said county on January 22, 1887, and recorded in
book 112, on page 140. Afterwards, and before ma-
turity, John D. Knox & Co., for a valuable considera-
tion, duly sold and indorsed said first note and
each of the said coupon notes to John Atkins,
and also assigned in writing and transferred to
him the mortgage securing the same, all of which
were and are the property of the plaintiffs herein.
At the time John D. Knox & Co. took said notes
for fifteen hundred dollars and interest, and the
mortgage securing the same, they had no actual
knowledge of the trust deed in favor of W. H. Ross-
ington, hereinbefore referred to, nor did the said John
Atkins, at the time he purchased the said note and
mortgage, nor did the plaintiffs, have actual knowl-
edge of said trust deed at the time said note and mort-
gage came into their possession. Out of the proceeds
of said loan for fifteen hundred dollars, John D.
Knox & Co., on January 29, 1887, paid to Julia Cur-
tis, now Julia Curtis Prall, the amount then due

148    ATKINS v. NORDYKE CO.

N. Dept.          Opinion.  Wells, J.          6 Kan. App.

upon the note and mortgage held by her.   The original mortgage was released by the said Julia Curtis, and, together with the notes, was turned over to John D. Knox & Co., and by them afterwards turned over to the plaintiffs herein, before the beginning of this action ; but the release was never entered of record. Afterwards, on January 1, 1892, Julia Curtis Prall executed an assignment of said mortgage and the note secured thereby to the plaintiffs herein, and received therefor at the time of the making of said assignment the sum of one dollar.

4.  On October 20, 1885, the Nordyke & Marmon Company, being then the owners and holders of the indebtedness secured by the trust deed to W. H. Rossington, hereinbefore mentioned, brought suit in the Circuit Court of the United States for the District of Kansas to foreclose such trust deed.   In this suit all parties having an interest in or lien upon said land, of record subsequent to the date of said trust deed, were made parties defendant, and were duly served with chancery subpœna.   John D. Knox & Co. and Julia Curtis were not parties to said action and had no actual knowledge of the pendency thereof.   A final decree was entered in said cause, in favor of the complainant and against the defendants, on February 14, 1888, and the court found that the Nordyke & Marmon Company had a first lien upon the premises in controversy herein, and ordered the sale thereof if said lien was not paid within six months from that date.   The judgment not being paid, a sale was duly had according to law and the order of said court, on October 31, 1888, by the Master in Chancery, and the property was sold to the Nordyke & Marmon Company for the sum of twenty-one hundred dollars.   This sale was duly confirmed by the court, and a deed executed for the property, which was filed for record on January 22, 1889, and recorded in book 169, at page 20.   This sale was in every respect legally made, and the purchasers thereat are still the owners of said premises and in possession of the same, and have been ever since the delivery of said deed.

Dec. 18, 1897.        Opinion.    Wells, J.            E. Div.

This action was begun in the Circuit Court of Shaw-
nee County on February 10, 1892, the plaintiff asking
a foreclosure of the John D. Knox mortgage, and that
the Rossington trust deed be declared void, or, if this
could not be done, that the plaintiffs be subrogated
to the rights of Julia Curtis under the first mortgage
above described. The matter was presented to the
court upon the agreed statement of facts and without
any further evidence, and judgment was rendered by
the court in favor of the defendants. After this a
motion for a new trial was duly made, overruled, and
excepted to, as well as a motion of the plaintiffs for
judgment upon the agreed statement of facts, and the
case was brought to this court for review.

The first question demanding our attention is, Have
the plaintiffs in error, by their laches, lost all right to
the equitable relief sought? We are clearly of the
opinion that, if they had promptly and with reason-
able diligence sought to correct their errors and to be
subrogated to the amount paid out to release the first
mortgage, such relief would have been granted; and
it is substantially admitted by the plaintiffs in error
that, if by their acts or negligence the defendant in
error has changed its condition so that it would,
against equity, lose something if subrogation should
be permitted, it should not be allowed. It seems to
us that this raises about the only material question
in the case. Will the defendant in error be in as
good condition, if subrogation be allowed now, as it
would have been had the plaintiffs in error and those
under whom they claim promptly discovered their
mistake and made their application for relief?

On January 20, 1887, Knox & Co. made the loan un-
der which plaintiffs claim a right to be subrogated to
the first mortgage. At that time the Rossington trust

150      ATKINS V. NORDYKE CO.

N. Dept.      Dissenting Opinion.    Mahan, P. J.     6 Kan. App.

deed had been on record nearly two years, and proceedings had been instituted to foreclose the same more than one year. This foreclosure suit was not tried for over a year after their loan was made. The sale was made eight months later, and then nearly another month elapsed before it was confirmed. Nearly two months more intervened before the defendant in error put its deed on record, and after that late date the plaintiffs in error waited over three years before taking any steps to remedy their own mistake. It seems to us that this was inexcusable negligence, and, if there is any doubt about the defendant in error being in as good condition after subrogation now, as it would have been had subrogation been promptly applied for, it will not be granted. That there is no such doubt we cannot say. There is no finding or statement as to when the holders of the Knox & Co. mortgage first learned that it was not a first mortgage, and we have a right to assume that, as reasonably prudent business men, they learned it soon after taking it; and if they had then applied to be subrogated, we can imagine many things that the Nordyke & Marmon Company might have done to put itself in better position than it would be to-day. It is sure that it would have a larger personal judgment now unpaid against the Heales, and we cannot say as a matter of law that this would be valueless.

The judgment of the court below will be affirmed.

McElroy, J., concurring.

MAHAN, P. J. (dissenting). It is conceded in this case by the majority of the court that the plaintiffs in error would be entitled to subrogation under the first mortgage upon the property in controversy, except that they did not bring their action in time. The majority of

ATKINS v. NORDYKE CO.    151

Dec. 18, 1897.   Dissenting Opinion.   Mahan, P. J.    E. Div.

the court places the affirmance of the judgment of the court below upon the ground that the plaintiffs delayed too long in bringing their action. Under the old system of practice, where law and equity were kept distinct and the Statute of Limitations did not strictly apply to proceedings in equity, there might be some authority for declaring this rule in this case. But we have abolished the distinction between law and equity, and all causes of action are governed as to the time when they shall be begun by our express statutory provisions. If this action was begun within the Statute of Limitations governing such cases, the court cannot say that the plaintiffs were guilty of laches in that respect. The right to maintain a suit does not any longer depend upon the length of a chancellor's foot, as has been said, but depends upon the positive legislation of the State. The statute is broad enough to cover every action that may be brought; and it is the rule that is to be applied, and not any question of laches upon the part of the plaintiffs.

Admitting, as the majority of the court do, that the plaintiffs were entitled at one time to the right of subrogation, they were entitled to it at the beginning of the suit, unless their action was barred by the Statute of Limitations; and this is not claimed by the court. The only real question, admitting the right of subrogation, is, Would it be inequitable to grant the subrogation, by reason of any change in the relation of the defendant in error, the Nordyke & Marmon Company, to the property? The Nordyke & Marmon Company took this mortgage under which it claims title subject expressly to the first mortgage. It brought its suit, filed its bill on the chancery side of the United States Circuit Court, to foreclose the second mortgage, subject to the first mortgage. Hence,

the holder of the first mortgage was not a party, and was not a necessary party. When it took its decree, that could be no broader than its bill; and when it took its deed, that could have been no more comprehensive than its decree. Hence, it must have taken its title subject to the first mortgage. In what way was its condition altered to its disadvantage by having the title subject to the first mortgage rather than having its second mortgage? In order to perfect its title, it would be compelled, according to the very terms of its foreclosure, to pay the first mortgage. If subrogation is allowed, it will be compelled to pay the first mortgage and nothing more.

In my judgment, there is no reason existing under the statement of facts under which the case was decided why subrogation should be denied; and, in my opinion, the judgment of the District Court was erroneous, and the judgment should be reversed with direction to grant the prayer of the plaintiffs' petition upon the agreed statement of facts.